UNITED STATES, Appellee,

v.

Jeffrey D. GRIFFITH, Airman First Class, U.S. Air Force, Appellant.

No. 57,660.
ACM S27304.

U.S. Court of Military Appeals.

Sept. 28, 1988.

For Appellant: *Major Deborah A. Baker* (argued); *Colonel Leo L. Sergi* (on brief).

For Appellee: *Lieutenant Colonel Robert E. Giovagnoni* (argued); *Colonel Joe R. Lamport* and *Captain Marc Van Nuys* (on brief).

## OPINION OF THE COURT

EVERETT, Chief Judge:

Appellant was tried by special court-martial with officer members on a charge that he wrongfully used lysergic acid diethylamide (LSD) on or about January 19, 1986, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. Contrary to his pleas, he was found guilty and was sentenced to a bad-conduct discharge, confinement for 45 days, and reduction to airman basic. The convening authority approved the sentence; and the Court of Military Review affirmed (Senior Judge Sessoms dissented, concluding that the findings of fact were incorrect).

We granted review to consider two issues submitted by appellant:

### I

WHETHER APPELLANT WAS DENIED EFFECTIVE REPRESENTATION BY TRIAL DEFENSE COUNSEL.

### II

WHETHER THE EVIDENCE IS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT THE FINDINGS.

In addition, we specified this issue:

WHETHER THE MILITARY JUDGE HAD THE POWER TO GRANT, ON HIS OWN MOTION, A JUDGMENT OF ACQUITTAL (SEE FED.R.CRIM.P. 29).

### I

■ Insofar as denial of effective assistance of counsel is concerned, the Supreme Court established a two-part test in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See also United States v. Scott*, 24 M.J. 186 (C.M.A. 1987). Not only must the defendant demonstrate that his attorney's "acts or omissions were outside the wide range of professionally competent assistance," 466 U.S. at 690, 104 S.Ct. at 2066, but he also "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would

have been different." *Id.* at 694, 104 S.Ct. at 2068. In this case, we need not decide whether defense counsel's performance was within "the ... range of professionally competent assistance," because we are convinced from our examination of the record that any deficiencies on his part had no effect on the outcome. This is especially true, since the military judge intervened at one point to insure that some inadmissible evidence would not be considered by the court members, even though defense counsel had not objected to it. Thus, there is no merit to Issue I.

### II

■ One witness testified to having seen Griffith place some LSD in his mouth. Regardless of the credibility of this witness—which has been questioned both at trial and on appeal—and regardless of the strength of the corroborating evidence—which also has been vigorously attacked—we are convinced that the testimony of this eyewitness was legally sufficient to support the conviction of wrongful use.

### III

#### A

At the end of the Government's presentation of evidence, the defense moved for a finding of not guilty, which the military judge denied. Subsequently, the members found Griffith guilty. During sentencing, the military defense counsel asked the members to reconsider their findings, as permitted by R.C.M. 924, Manual for Courts-Martial, United States, 1984. Obviously, they declined to do so. Then, after the sentence had been announced and the members had departed, the military judge made this statement for the record:

Be seated please. The members have departed the courtroom. In the past two years and some months I have presided over more than 100 trials, how many I don't know. This is the first case that I have seen where I believe that the members returned a verdict that is not consistent with the evidence and the de-

meanor of the witnesses; that is a verdict of guilty.

For the first time since I have been a judge I am going to recommend that the convening authority and all reviewing authorities look very closely at the evidence in this case as it appears on the printed pages to see if the evidence supports the verdict. My personal opinion is that it does not. However, under our military rules of practice I am powerless to overturn the verdict or to entertain a motion for a directed verdict or a finding of not guilty after the general verdict has been returned. I was unable to grant the defense motion for a finding of not guilty that was appropriately made because of the lower standard that applies to a judge in considering such a motion. I, myself, paid very very close attention to the witnesses and to all of the evidence in the case and I am not only unpersuaded beyond a reasonable doubt that the accused is guilty, I am quite unpersuaded that he is guilty. If I had to make [a] judgment of guilt or innocence in this case, and that is not required, I would be more inclined to say that the accused is innocent as opposed to he is just not guilty under the standard.

Even if reviewing authorities should fail to give the accused relief from a verdict of guilty, I would encourage them to look very very closely at the sentence. I consider the bad conduct discharge that the court adjudged to be totally inappropriate, even assuming that the accused is guilty. I would urge that some relief be afforded.

Thank you very much for your time and attention. I appreciate counsel's presentations on both sides. The court-martial is adjourned.

## B

Griffith now claims that the military judge misperceived his authority to enter a finding of not guilty after the trial had ended. In this connection, reliance is placed by appellant on Fed.R.Crim.P. 29(b), which specifically permits a Federal judge to delay his ruling on a motion for a "judgment of acquittal" until after a jury verdict has been returned. Also, Griffith contends that—just as a federal district judge has been held to have inherent authority to enter a judgment of acquittal, even after a trial has ended, *see United States v. Broadus*, 664 F.Supp. 592 (D.D.C.1987)—we should rule that a military judge may enter a finding of not guilty even after the court-martial members have completed sentencing the accused.

The Government responds that R.C.M. 917(a) authorizes a military judge, upon defense motion or *sua sponte*, to "enter a finding of not guilty of" any offense "charged after the evidence on either side is closed and *before* findings on the general issue of guilt are announced if the evidence is insufficient to sustain a conviction of the offense affected." (Emphasis added.) This language, it is urged, implicitly excludes granting such a motion after findings. Thus, even though the court members may reconsider findings of guilty after they have been announced but "before announcement of the sentence," *see* R.C.M. 924(a), a military judge sitting with members may not do so;[1] and *a fortiori*, he is precluded from ruling on a motion for a finding of not guilty after sentence has been announced and the trial has ended.

The Drafter's Analysis supports the government position, for, in connection with R.C.M. 917(a), it states:

This subsection is based on Fed.R. Crim.P. 29(a) and on the first two sentences of paragraph 71a of MCM, 1969 (Rev.). Paragraph 71a did not expressly provide for a motion for finding of not guilty to be made sua sponte, as does Fed.R.Crim.P. 29(a). Unlike Fed.R. Crim.P. 29, this rule requires the motion to be resolved before findings are entered. If the evidence is insufficient to

---

1. Under R.C.M. 924(c), a military judge sitting alone may reconsider "before announcement of sentence."

support a rational finding of guilty, there is no reason to submit the issue to the members. That would be inefficient. Moreover, if a military judge set aside some, but not all findings as "irrational," it would be awkward to proceed to sentencing before the same members. However, nothing in this rule is intended to limit the authority of a military judge to dismiss charges after findings on other grounds, such as multiplicity or improper findings (e.g., conviction for both larceny as perpetrator and receiving stolen property, *see United States v. Cartwright,* 13 M.J. 174 (C.M.A.1982); *United States v. Ford,* 12 U.S.C.M.A. 3, 30 C.M.R. 3 (1960); *cf. United States v. Clark,* 20 U.S.C.M.A. 140, 42 C.M.R. 332 (1970)). Manual, *supra* at A21–58.

### C

In discerning the limits of a military judge's authority, it is helpful to consider how the position of military judge has evolved. The Articles for the Government of the Navy (A.G.N.) contemplated that in a general court-martial there would be a "judge advocate or person officiating as such," *see* Art. 40, A.G.N. During "open session," the "judge advocate" would "advise the court in all matters of form and of law." However, his role was not primarily judicial because he also was required to present "the case for the Government," § 400, Naval Courts and Boards, 1937; and, if "the accused ha[d] no counsel, the judge advocate shall protect his interests, having in mind, however, at all times his duties as prosecutor." *Id.* at § 401. Article of War (A.W.) 8 provided that, in general courts-martial, a lawyer would sit as "law member." Unlike a judge, the "law member" deliberated and voted with the other members. *See* A.W. 8, 30, and 31.

The Uniform Code of Military Justice took a very different approach and required that a general court-martial have a "law officer"—a lawyer who was to sit apart from the court-martial members, instruct them on the applicable law, and make interlocutory rulings. *See* Arts. 16, 26, and 51, 10 U.S.C. §§ 816, 826, 851; Pub.L. No. 506, 81st Cong., 64 Stat. 108. When the Code was being considered by a subcommittee of the House Armed Services Committee, Professor Edmund M. Morgan stated that the law officer "will now act solely as a judge and not as a member of the court, which becomes much like a civilian jury" and that "the law officer now becomes more nearly an impartial judge in the manner of civilian courts." Hearings on H.R. 2498 Before a Subcomm. of the House Armed Services Comm., 81st Cong., 1st Sess. (hereafter House Hearings) 602 and 603 (1949). In discussing the law officer's instructional duties before a subcommittee of the Senate Armed Services Committee, Professor Morgan explained "that he acts like a judge, and the court is in fact just like a jury." Hearings on S.857 and H.R. 4080 Before a Subcomm. of the Senate Armed Services Comm., 81st Cong., 1st Sess. 41 (1949).

> Early in its history, this Court concluded: No one who has read the legislative history of the Code can doubt the strength of the Congressional resolve to break away completely from the old procedure and insure, as far as legislatively possible, that the law officer perform in the image of a civilian judge. This policy is so clear and so fundamental to the proper functioning of the procedural reforms brought about by the Uniform Code of Military Justice that it must be strictly enforced. . . .

*United States v. Keith,* 1 U.S.C.M.A. 493, 496, 4 C.M.R. 85, 88 (1952). Moreover, this Court has concluded that Congress intended for the law officer of a general court-martial to be the counterpart "of a civilian judge of the Federal system." *See United States v. Biesak,* 3 U.S.C.M.A. 714, 722, 14 C.M.R. 132, 140 (1954).

In *United States v. Stringer,* 5 U.S.C.M.A. 122, 17 C.M.R. 122 (1954), the Court upheld the power of a law officer to declare a mistrial—even though the Manual for Courts-Martial apparently had granted this power only to the convening authority. The Court's conclusion was based in part

on the parallel between the law officer and the trial judge in most civilian jurisdictions.

In *United States v. Strand*, 6 U.S.C. M.A. 297, 20 C.M.R. 13 (1955), the law officer had reserved decision on a motion to dismiss a specification until after findings. Then, after the members had returned findings of guilty, he dismissed a specification on grounds of multiplicity and instructed the court members that this specification should not be considered in determining the sentence. In upholding the law officer's power to proceed in this manner, the Court reasoned:

> If the law officer has any doubt about a question requiring a ruling, good sense and sound practice require careful consideration of the question, rather than an "off the cuff" decision. *Civilian courts recognize the practice of reserving decision on a motion raising a question of law, until after the verdict of the jury.* There is no compelling reason requiring a different practice in the military, particularly when the procedure is consistent with the logical construction of Article 51(b).

*Id.* at 306, 20 C.M.R. at 22 (emphasis added; citation omitted).

Some criticism was directed against the Court's opinions which had modeled the law officer on the federal district judge. *See, e.g.,* Miller, *Who Made The Law Officer A "Federal Judge"?*, 4 Mil.L.Rev. 39 (1959). However, this criticism obviously found no favor with Congress, for, after extensive Senate Hearings in 1962 and 1966, Congress enacted the Military Justice Act, Pub.L. No. 90–632, § 2(9), 82 Stat. 1335, 1336 (1968), which replaced the "law officer" with the "military judge"; provided that not only general courts-martial but also special courts-martial would be presided over by military judges; and granted the judges specific authority to "call the court into session without the presence of the members." *See* Art. 39(a), UCMJ, 10 U.S.C. § 839(a).

In recognition of the congressional intent manifested by this 1968 legislation, the Court stated in *United States v. Brickey*, 16 M.J. 258, 263–64 (C.M.A.1983):

> In recent years, there has been increased recognition that the powers of a military judge do not cease with the court-martial's announcement of the sentence. To some extent, this recognition may have been stimulated by the enactment of the Military Justice Act of 1968, Pub.L. No. 632, 82 Stat. 1335. By granting specific authority for a military judge to "call the court into session without the presence of the members" pursuant to Article 39(a)—which contains no express limitation on the stage of the proceedings to which it applies—Congress made it feasible for a military judge to conduct post-trial proceedings even when the court-martial members cannot be reassembled. Furthermore, replacement of the "law officer" with the "military judge" tended to suggest that Congress meant for this judge to possess the post-trial powers customarily enjoyed by his civilian counterparts in the judiciary.
>
> Our Court perceived that a post-trial Article 39(a) hearing before a military judge often would provide a means for promptly eliminating an ambiguity or omission in the record, or disposing of a claim of error, before necessary witnesses dispersed, memories faded, and witnesses became unavailable. Consistent with that perception and with Manual language, *see* para. 80, Manual for Courts-Martial, United States, 1969 (Revised edition), we ruled that a military judge could conduct a revision hearing on his own motion; and we held that Article 62(b), 10 U.S.C. § 862(b), which allows a convening authority to direct such a proceeding, was not exclusive of the judge's own power to initiate a hearing. *United States v. Roman*, 22 U.S.C.M.A. 78, 46 C.M.R. 78 (1972); *United States v. Barnes*, 21 U.S.C.M.A. 169, 44 C.M.R. 223 (1972). Furthermore, by our own example and otherwise, we have encouraged use of the hearing first employed in *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967). *See United States v. Vietor*, 10 M.J. 69 (C.M.A.1980);

*United States v. Killebrew,* 9 M.J. 154 (C.M.A.1980); *Smith v. Helgemoe,* 23 U.S.C.M.A. 38, 48 C.M.R. 509 (1974). We have observed that after trial a military judge may hold a hearing to resolve a dispute as to the accuracy of a record of trial. *United States v. Anderson,* 12 M.J. 195 (C.M.A.1982). In *United States v. Palenius,* 2 M.J. 86 (C.M.A.1977), we intimated that a military judge has certain powers after trial to allow trial defense counsel to withdraw and, at the same time, to assure the uninterrupted representation of the accused. In *United States v. Witherspoon,* 16 M.J. 252 (C.M.A.1983), we recognized the alternative of a post-trial hearing before a military judge with respect to jury misconduct.

■ Consistent with our conclusion in *Brickey* and in other cases that Congress intended for a military judge to have the power to conduct post-trial proceedings until authentication of the record has taken place, we are convinced that if, before authenticating the record of trial, a military judge becomes aware of an error which has prejudiced the rights of the accused— whether this error involves jury misconduct, misleading instructions, *or insufficient evidence*—he may take remedial action on behalf of the accused without awaiting an order therefor by an appellate court. This result is predicated on our interpretation of congressional intent. That intent was implicit in the establish-ment of the position and title of "military judge" by the Military Justice Act of 1968. Moreover, it advances the purpose of more recent legislation, which has removed from the convening authority and his staff judge advocate the general responsibility of preparing a legal review of the record of trial. *Cf.* R.C.M. 1106.[2] As a result of this legislation, if the military judge lacked the power to take action to correct prejudicial error that had occurred at trial, relief for the accused might be delayed until review of the case by the Court of Military Review[3] or might never be given.[4]

The Code and the Manual have not adopted all the procedures that apply in federal criminal trials. For example, R.C.M. 917 apparently does not allow a military judge to reserve his ruling on a motion for a finding of not guilty until after the members have returned their findings[5]—a procedure not only permitted by Fed.R.Crim.P. 29(b) but even encouraged by the Supreme Court. *See United States v. Scott,* 437 U.S. 82, 100 n. 13, 98 S.Ct. 2187, 2198–99 n. 13, 57 L.Ed.2d 65, 80 n. 13 (1978), where the Court commented:

> We should point out that it is entirely possible for a trial court to reconcile the public interest in the Government's right to appeal from an erroneous conclusion of law with the defendant's interest in avoiding a second prosecution. In *United States v. Wilson,* 420 U.S. 332 [95 S.Ct. 1013, 43 L.Ed.2d 232] (1975), the court permitted the case to go to the jury,

2. However, if the defense makes "an allegation of legal error ... in matters submitted [after trial] under R.C.M. 1105 or when otherwise deemed appropriate," the staff judge advocate must "state whether ... corrective action on the findings or sentence should be taken." R.C.M. 1106(d)(4).

3. Although, under Article 60(c)(3), Uniform Code of Military Justice, 10 U.S.C. § 860(c)(3), the convening authority *may,* "in his sole discretion," act on the findings, such action "is not required." Any modification of the finding or sentence "is a matter of command prerogative involving the sole discretion of the convening authority." Art. 60(c)(1). Accordingly, there is no assurance that prejudicial trial error will be cured at that level.

4. Unless the sentence is sufficient to meet the requirements of Article 66 of the Code, 10 U.S.C. § 866, or the case is referred to the Court of Military Review under Article 69, UCMJ, 10 U.S.C. § 869, review in that court will not take place. Moreover, review by the Judge Advocate General of a general court-martial under Article 69(a) is without benefit of defense advocacy; and review by the Judge Advocate General of other courts-martial under Article 69(b) is, additionally, only on application by the accused, not automatic.

5. *But cf. United States v. Strand,* 6 U.S.C.M.A. 297, 306, 20 C.M.R. 13, 22 (1955) (Article 51(b), 10 U.S.C. § 851(b) empowers a military judge to reserve ruling on a motion to dismiss until after findings).

which returned a verdict of guilty, but it subsequently dismissed the indictment for preindictment delay on the basis of evidence adduced at trial. Most recently in *United States v. Ceccolini*, 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978), we described similar action with approval: "The District Court had sensibly first made its finding on the factual question of guilt or innocence, and then ruled on the motion to suppress; a reversal of these rulings would require no further proceedings in the District Court, but merely a reinstatement of the finding of guilt."

According to appellate government counsel, Article 62(a) of the Uniform Code, 10 U.S.C. § 862(a), does not contemplate a government appeal from a military judge's order granting a motion for a finding of not guilty, as is permitted under some circumstances in Federal criminal trials pursuant to 18 U.S.C. § 3731. *Cf. United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975); *see United States v. Morrison*, 429 U.S. 1, 97 S.Ct. 24, 50 L.Ed.2d 1 (1976). However, the differences in military and Federal criminal procedure which have been called to our attention are not of such a nature as to change our conclusion that Congress intended that, even after the court members have sentenced an accused, the military judge might dismiss a specification as to which he concluded the proof was legally insufficient to establish guilt.

### D

■ Appellate defense counsel argue that the military judge not only has the power to rule after trial on the legal sufficiency of the evidence—as is permitted in Federal trials by Fed.R.Crim.P. 29—but also may set aside findings of guilty after trial if he determines that they are against the weight of the evidence. Although Fed. R.Crim.P. 33 apparently allows Federal District judges to take such action,[6] we are

unconvinced that a military judge may become the "thirteenth juror" in this manner. Instead, as we interpret the military judge's responsibilities under the Code, he may determine only whether the rights of an accused have been prejudiced by legal error—such as legal insufficiency of the government evidence—and may not decide the credibility of the witnesses.

■ The military judge here may not have fully recognized that, even after the trial had ended, he was empowered to set aside the findings of guilty if it was apparent to him that the evidence was legally insufficient. However, any misperception by the judge of his authority in this regard did not prejudice Griffith because, as we already have observed, the evidence was legally sufficient to withstand a motion for a finding of not guilty.

The military judge's chief concern seems to have been that the guilty findings were against the weight of the evidence. In this connection, he properly recognized that— neither during nor after the trial—was he entitled to decide on the respective credibility of the government and defense witnesses. Despite his disbelief of the prosecution witnesses, he was not authorized to set aside the findings of guilty, since, at all times, their credibility was solely for the court members to determine.

### IV

The decision of the United States Air Force Court of Military Review is affirmed.

Judge SULLIVAN concurs.

COX, Judge (concurring):

Recognizing that Article 36, Uniform Code of Military Justice, 10 U.S.C. § 836, granted unto the President the power to prescribe rules pertaining to court-martial proceedings, I would have been happier if the result reached by us today had been

---

6. *See* Wright, *Federal Practice and Procedure: Criminal 2d* § 553 (1982). According to Professor Wright, the motion for a new trial because "the verdict is against the weight of the evidence ... is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial on this ground should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict."

accomplished by a change to trial procedures found in R.C.M. 917, Manual for Courts-Martial, United States, 1984. Nevertheless, I join Chief Judge Everett in his decision and in his efforts to reconcile this Court's previous decisions in *United States v. Brickey, United States v. Strand,* and *United States v. Stringer,* * with R.C.M. 917.

It seems logical to me that *if* a military judge has the power to direct a verdict of not guilty on a charge or specification for lack of sufficient evidence, *when* he exercises that power is of no legal moment. It may be the better and more economical practice for a military judge to rule on the motion prior to findings, as is suggested in the Manual. But, if a military judge realizes that he has erred in his ruling or if some other reason moves him to reconsider his decision, then justice would be thwarted if a strict interpretation precludes him from correcting his own error. I believe such construction of the military judge's power will, in the long run, inure to the Government's benefit, for it provides an opportunity to clear up matters before the appellate processes take over.

* *United States v. Brickey,* 16 M.J. 258 (C.M.A. 1983), *United States v. Strand,* 6 U.S.C.M.A. 297, 20 C.M.R. 13 (1955), and *United States v. Stringer,* 5 U.S.C.M.A. 122, 17 C.M.R. 122 (1954).